# United States District Court

**SEALED**        **FILED**

DISTRICT OF _____

MAY - 7 2008
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA
V.
**MICHAEL IAN GO LARGENT**
2240 Golden Gate Drive
Plumas Lake, California 95961

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER:

**2 08 - MJ - 0 1 6 8    DAD**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **June 2007 to May 2008** in **Yuba** county, in the **EASTERN** District of **CALIFORNIA**, defendant(s) did, (Track Statutory Language of Offense)

**commit Mail Fraud, in violation of Title 18 USC, Section 1341; Wire Fraud, in violation of Title 18 USC, Section 1343; Bank Fraud in violation of Title 18, Section 1344; and Fraud Relating to Computers, in violation of Title 18 USC, Section 1030. See also the Affidavit for Search Warrant and Criminal Complaint, attached hereto, and incorporated by reference, all**

in violation of Title **18**, United States Code, Section(s) **1341, 1343, 1344 and 1030.**

I further state that I am a(n) **Special Agent** and that this complaint is based on the following facts:
                           Official Title

**see Affidavit for Search Warrant and Criminal Complaint, attached hereto, and incorporated by reference.**

Continued on the attached Sheet and made a part hereof: ☒ Yes ☐ No

_____
Senior Special Agent Brian J. Korbs, United States Secret Service
Signature of Complainant

Sworn before me and subscribed in my presence,

May 7, 2008                        at    Sacramento, California
Date                                     City and State

**Dale A. Drozd, United States Magistrate Judge**        _____
Name and Title of Judicial Officer                        Signature of Judicial Officer

## AFFIDAVIT FOR SEARCH WARRANT AND CRIMINAL COMPLAINT

I, Brian Korbs, a Senior Special Agent of the United States Secret Service, being duly sworn, depose and state as follows:

### Introduction

1. I am a Senior Special Agent ("SSA") of the United States Secret Service ("USSS") and have been so employed since 1984. I am currently assigned to the Sacramento Resident Office. As part of my duties, I investigate offenses involving various financial crimes to include those that involve the counterfeiting of currency, false identification, bank fraud, computer fraud, and access device fraud. In that capacity, I have received training and have become familiar with the investigation and prosecution of these types of crimes including the use of various criminal methods used to perpetrate these frauds.

2. I have also received training through the U.S. Secret Service's Electronic Crimes Special Agent Program ("ECSAP"), and I am trained and qualified to conduct forensic examinations of computers and other forms of digital evidence. I have conducted over 150 computer examinations in my career and have testified to the results of these examinations in federal court.

3. I am familiar with the information contained in this affidavit based on: (i) direct knowledge of each of the following facts or upon information provided to me by other law enforcement officers; (ii) interviews conducted with various individuals; and (iii) information received from third parties, such as bank investigators and victims.

4. I make this affidavit in support of the issuance of a criminal complaint and arrest warrant against Michael Ian Go Largent ("Largent"), Asian male, DOB: 9/24/86 for violations of Title 18, United States Code, Sections 1341 (Mail Fraud); 1343 (Wire Fraud); 1344 (Bank Fraud) and section 1030 (Fraud Relating to Computers).

5. I am also submitting this affidavit in support of a search warrant for:

>The person of Largent;

>The single family residence located at 2240 Golden Gate Drive, Plumas Lake, California;

>A 1999 silver Volkswagen four door sedan, California license 5SZX453 registered to Largent, 2240 Golden Gate Dr., Plumas Lake, California; and

>A 2003 grey Lexus four door sedan, California license 6CNH729, registered to Largent, 2240 Golden Gate Dr., Plumas Lake, California.

These locations identified above are more fully described in Exhibit "A" to this Search Warrant, which is attached hereto and incorporated by reference.

6. There is probable cause to believe, and I do believe, that the fruits and instrumentalities relating to violations of Title 18, United States Code, Sections 1341 (Mail Fraud); 1343 (Wire Fraud); 1344 (Bank Fraud) and section 1030 (Fraud and related activity in connection with computers) will be found at the above locations, as set forth in Attachment B, attached hereto and incorporated by reference.

7. This affidavit is based upon my personal observations, review of evidence obtained, and training and experience as a law enforcement agent, as well as my communications with other law enforcement personnel, including Secret Service agents assisting in the investigation, Federal Bureau of Investigation (FBI) agents, and other law enforcement officers. I have also relied on information received from investigators and employees at E*trade Bank, Charles Schwab, Google and other financial companies affected by this criminal activity.

8. I have not included in this affidavit all of the information in my possession relating to the premises to be searched and the crimes described herein. Rather, I have set forth in this affidavit only such facts as I have deemed necessary to establish probable cause to search the person, residence and vehicles described in "Attachment A."

## Glossary of Terms

9. The following is a glossary of certain terms regarding the Internet and computer technology used in this affidavit:

> Internet Protocol Address ("IP address"): An IP address is a unique numeric address used by computers on the Internet. An IP address looks like a series of numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that the Internet traffic sent from and directed to that computer may be properly directed from its source to its destination. Most internet service providers ("ISPs") control a range of IP addresses.

> Internet Service Providers ("ISPs"): Many individuals and businesses obtain access to the Internet through businesses known as Internet Service Providers ("ISPs"). ISPs provide their customers with access to the Internet using telephone or other telecommunications lines; provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISP's servers; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP. ISPs maintain records pertaining to the individuals or companies that have subscriber accounts. The records could include identifying and billing

information, logs of when the customer accessed the Internet, and logs of e-mail access time.

Automated Clearing House ("ACH"): ACH is the name of an electronic network for financial transactions in the United States. ACH processes large volumes of both credit and debit transactions which are originated in batches. Rules and regulations governing the ACH network are established by NACHA – The Electronic Payments Association and the Federal Reserve. Many banks use "ACH" to enable customers to transfer money from one bank account to an external bank account.

Micro-deposit: In order to verify an ACH setup, a micro-deposit that ranges between $0.01 and $1.00, is deposited into the registered bank account to test the functionality of the account.

## Overview of the Investigation

### The Fraud Scheme

10. There is probable cause to believe that from approximately June 2007 through May 2008, Largent defrauded E*trade, Charles Schwab ("Schwab"), and others by creating tens of thousands of brokerage and bank accounts with the intent of stealing the "micro deposits" deposited by the financial institutions to test the functionality of accounts when they are opened. Largent carried out the fraud by writing a computer program or script, which caused more than 58,000 on-line accounts to be opened at E*trade, Schwab, and other financial institutions. These accounts were opened using false names and other identification information, including false driver's license and social security numbers, to open the accounts. Largent opened these accounts knowing that as part of the account verification process that the micro-deposits would be transferred electronically, via the ACH system, into bank accounts controlled by him. Accordingly, when the deposit occurred, Largent would immediately cause the funds to be transferred into other accounts controlled by him, or transferred onto debit cards, for his personal use. As a result, Largent has been able to fraudulently obtain funds and has caused damage to the financial institutions, totaling more than $50,000.

### The Investigation

#### Schwab Fraud

11. Under the Patriot Act, financial institutions, including brokerage firms and banks, are required to verify account information when an account is opened. According to Schwab, in or about January 2008, Schwab account auditors were notified that more than 5,000 on-line accounts had been opened using invalid social security numbers or other information. As a result, investigators from Schwab began attempting to determine how these accounts were opened. According to brokerage records, bank records, ISP information, telephone records, and other documents, there is probable cause to believe

3

that these fraudulent accounts were opened by "Michael Largent" who resides at 2240 Golden Gate Drive, Plumas Lake, CA 95961. The fraudulent accounts have been linked to Largent in a number of ways, as set forth below.

12. February 26, 2008, through February 28, 2008, approximately 9 IP addresses were used to create approximately 14,000 fraudulent Schwab accounts. Of these 9 IP addresses, 5 were assigned by AT&T to mikelargent@att.net, 2240 Golden Gate Drive, Plumas Lake, CA 95961.

13. Largent used false and fictitious names to open accounts, including accounts in the names of "Speed Apex," "Rusty Shackelford," "Johnny Blaze," and "Hank Hill." I am informed and believe that "Speed Apex," "Rusty Shackelford," "Johnny Blaze," and "Hank Hill" refer to known television cartoon and comic book characters.

14. Certain accounts were opened in the names "Erika Jones," "Naiyoon Chao," and Mylene Morrales." Jones appears to be a resident on Azevedo Drive, Sacramento, CA . Largent used a large number of different addresses on Azevedo Drive to open the Schwab accounts, as well as a bank account at Capitol One bank. Largent has identified Chao as his wife, but we have not been able to confirm he is married. "Mylene Morrales" is a name tied to former address used by Largent.

15. In addition, I know that of the five (5) IP addresses that were registered to mikelargent@att.net, 2240 Golden Gate Drive, Plumas Lake, CA 95961, were used to create approximately 11,384 Schwab accounts under the name "Speed Apex".

16. The name "Speed Apex" can be further tied to Largent through electronic evidence maintained by Schwab. Specifically, I know that on or about December 24, 2007, Largent attempted to open a brokerage account at Schwab in the name Michael Largent, 2240 Golden Gate Drive, Plumas Lake, CA 95961, Telephone: 530-749-1815. On April 30, 2008, Schwab sent a letter to Largent at the same address stating that the account was being terminated because the opening process was not completed. Schwab, however, retained certain electronic tracking information relating to the transaction, including information regarding the computer used to log onto the Schwab Web site. Based on this information, Schwab has determined that the same computer used to attempt to open this account in the name Michael Largent was also used to open thousands of accounts in the name "Speed Apex."

17. I also know that according to records obtained from AT&T the telephone number 530-749-1815 is registered to Michael Largent, 2240 Golden Gate Drive Plumas Lake, CA 95961,

18. Further, there have been thousands of attempts to open accounts in which the domain name "speedapex.com" provided as email contact information. Open source internet searches reveal that speedapex.com once hosted a web-site called "Largent

4

Local." The site administrator for "Largent Local" was listed as "Mike." I believe that "Mike" and "Largent Local" refer to the target of this investigation Michael Largent.

19. I have also determined that from February 27 to March 3, 2008, 4 additional IP addresses were used to access the fraudulent Schwab accounts. These additional IP addresses were registered to third parties residing within 60 miles of Largent's home at 2240 Golden Gate Drive, Plumas Lake, CA 95961. Based on my education, training, and experience, I do not believe that these residents participated in the fraudulent activities. Rather, I believe that Largent was likely using his computer to use IP addresses that were not registered to him, without the owners' permission. I further believe that Largent did this by driving by residential locations to locate unsecure wireless ("WiFi") networks which he could log onto with his lap top computer.

### E*trade Fraud

20. There is evidence that between on or about March 15, 2008, and March 25, 2008, there is evidence that Largent fraudulently opened, and attempted to open 3,000 to 4,000 accounts per day at E*trade. Like the fraudulent transactions at Schwab, in opening the E*trade accounts, Largent used false names, addresses, social security numbers, and driver's license information to open the fraudulent accounts, including the name "Rusty Shackleford."

21. These accounts were opened via an automated process and sequentially numbered Social Security numbers ("SSNs") were used in to open the various accounts. All but 2 of the accounts were in the name "Rusty Shackleford" and listed an address of 3251 Azevedo Drive, Sacramento, CA 95833. Two accounts were opened in the name Michael Largent, using SSN xxx-42-9102, DOB 9/24/86, with an address of 2240 Golden Gate Drive, Plumas Lake, CA 95961. The SSN and DOB are those used by Largent. According to E*trade, it made up to 2 micro-deposits of about $1 each into certain accounts not immediately identified as having fraudulently been opened.

22. Based on information obtained in this investigation, 16 accounts opened at E*trade in the name Rusty Shackleford and 2 accounts in the name Michael Largent have been linked to a bank account at Skylight Financial, account number: xxxx114729. Based on my review of documents in this case, I have also determined that this Skylight bank account was linked to approximately 4,966 of the fraudulently opened Schwab brokerage accounts.

23. E*trade investigators advised that they analyzed IP information connected with the fraudulently opened accounts. It was determined that certain IP information used to open the accounts in the name Rusty Shackleford relate to IP information connected to the two accounts opened in the name Michael Largent.

5

### Google

24. In addition, I have learned from Bancorp Bank and agents with the FBI, in or about June 2007, prior to the E*trade and Schwab fraud, Largent began receiving multiple micro deposits into one of his Bancorp accounts from Google for amounts less than $1.00, (micro-deposits). The fraud involved the creation of a large number of "check out" accounts at Google which are used to carry out commercial purchases. It was discovered that Largent established approximately 8 different accounts in his name at Bancorp Bank, and the above activity is tied to these accounts. The address Bancorp Bank has listed for Largent is: 2240 Golden Gate Drive, Plumas Lake, CA 95961. I am informed and believe Largent had received $8,225.29 in fraudulent micro-deposits from Google into his Bancorp accounts. Largent used $3,156 for purchases and $4,133 to obtain cash advances.

25. Additionally, Bancorp called Largent's home telephone number 530-749-1815 and spoke with a person who identified himself as "Largent" who stated, that he was a web-programmer and wrote a computer script that generated Google checkout accounts. Largent stated that he read the terms on Google's web-site, and according to him, it states nothing about establishing multiple email addresses and accounts. Largent claimed he didn't think he was doing anything wrong. He stated that he needed the money to pay off debts and stated that this was one way to earn money, by setting up multiple accounts and having Google submit the two small deposits.

### Additional Bank Account Analysis

26. As part of the investigation, I have identified hundreds of bank accounts opened by Largent to carry out the fraud, including accounts at Metabank, Skylight bank, E*trade, Capital One, and Bancorp Bank.

27. For example, MetaBank investigators have located approximately 400 accounts at MetaBank in the name Michael Largent, 2240 Golden Gate Drive, Plumas Lake, California. Most of these accounts utilize pre-paid or stored value credit cards that allow the cardholder to make ATM withdraws, purchases, and/or cash advances from these accounts worldwide. Of these 400 accounts, I have found 4 which were linked to certain fraudulently opened E*trade and Schwab brokerage accounts.

28. I also know that on April 2, 2008, Largent opened an on-line bank account (in addition to the brokerage accounts) at E*trade using the following information:

| | |
|---|---|
| Account Name: | Mike Largent |
| Account Address: | 2240 Golden Gate Drive |
| | Plumas Lake, CA 95961. |
| Email Address: | mikelargent@gmail.com, |
| Telephone: | 530-749-1815 |
| Employer: | Largent Inc. |

6

When this account was opened, Largent requested that checks and a debit card be sent to him at the Plumas Lake address. I have determined that this E*trade bank account was linked to approximately 1,269 Schwab brokerage accounts.

### Vehicles

29. California Department of Motor Vehicles (DMV) records reveal that Michael Largent has two vehicles registered to him as follows:

> A 1999 silver Volkswagen four door sedan, California license 5SZX453 registered to Michael Largent, 2240 Golden Gate Dr., Plumas Lake, California; and

> A 2003 grey Lexus four door sedan, California license 6CNH729, registered to Michael Go Largent, 2240 Golden Gate Dr., Plumas Lake, California.

> During surveillance done in April and May 2008 at 2240 Golden Gate Dr., Plumas Lake, California, both cars were seen parked at the residence.

## EVIDENCE TO BE SEARCHED/ PERMISSION TO SEARCH COMPUTERS

### Introduction

30. Based upon my training and experience, and upon the training and experience of other law enforcement personnel with whom I have consulted, I believe that Michael Largent uses and has used computers to carry out the fraud scheme.

31. I know that the terms "records" and "documents" and "correspondence" include all of the foregoing items of evidence in whatever form and by whatever means such records, documents, correspondence, or materials, their drafts, or their modifications may have been created or stored, including, but not limited to, any handmade form (such as writing); any mechanical form (such as printing or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact discs, or any information on an electronic storage device, such as floppy diskettes, hard disks, flash drives, backup tapes, CD-ROMs, optical disks, other memory storage devices, personal digital assistants (PDAs) or electronic notebooks, as well as printouts or readouts from any magnetic storage device).

### Seizure of Electronic Evidence

32. Based in part on my experience as a computer forensic examiner, I know that:

> Computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two

distinct respects: (1) the items themselves may be instrumentalities, fruits, and/or evidence of crime; and/or (2) the items may have been used to collect and store information about crimes (in the form of electronic data). Thus, Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are: (1) instrumentalities, fruits and/or evidence of crime; and/or (2) storage devices for information about crimes.

Based on my further knowledge, training, and experience, I know that searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

The volume of evidence: Computer storage devices can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and often it would be impractical to attempt this kind of data search on site.

Attempted deletion of electronic records and information: Electronic records and information can remain on computer storage media, such as computer hard drives, for an indefinite period of time. Even when a computer user attempts to delete records and information from a computer storage medium, the records and information may still exist and can be recovered through computer forensic techniques. These computer forensic techniques can be time-consuming, and often it would be impractical to do them on site.

Technical Requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. For example, on site and laboratory analysis by a qualified computer specialist is often required in order to properly retrieve and analyze electronically stored (computer) data, document and authenticate the data, and prevent the loss of the data either from accidental or deliberate programmed destruction. In many cases, the evidentiary data can be backed up to government owned computer data storage devices at the site of the search. However, there are circumstances that may necessitate the seizure and removal of the entire computer system and peripheral devices to a secure laboratory setting in order to analyze and extract the evidence. To effect accurate and complete analysis may require seizure of all computer equipment and peripherals which may be

8

interdependent, the software to operate the computer system, data security devices (including passwords) and related instruction manuals which contain directions concerning the operation of the computer system and software programs. This is true because the peripheral devices which allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the computer expert be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence. In addition, the computer expert needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

1. Based on the above facts and circumstances and information, permission is requested to search all above-described computer systems and peripherals found at the search locations, and to search those items as set forth in Attachment B.

2. <u>Note on the duplication of computer storage media.</u> The agents will initiate the search by making a duplicate, or "image," copy of the computers, hard drives, and digital storage devices found on the premises. The agents will then use the duplicate image copies to search for the items listed above.

3. <u>Note on hidden and encrypted data.</u> Law enforcement personnel will search for and attempt to recover "deleted," "hidden," or encrypted data to determine whether the data falls within the list of items to be seized, as set forth herein.

4. <u>Computers to be returned.</u> If the computers found are not needed for evidentiary purposes, they will be returned within 60 days of the date the warrant is signed.

## Conclusion

33. Based upon the facts set forth in this Affidavit, and my experience investigating these types of crimes, there is probable cause to believe, and I do believe, that Michael Largent has committed, and continues to commit, violations of Title 18, United States Code, Sections 1341 (Mail Fraud); 1343 (Wire Fraud); 1344 (Bank Fraud) and section 1030 (Fraud and related activity in connection with computers)

9

Accordingly, I request that an arrest warrant be issued for the foregoing criminal violations.

34.     Based upon the facts set forth in this Affidavit, and my experience investigating these types of crimes, there is probable cause to believe, and I do believe, that there the fruits and instrumentalities and evidence of violations listed above will be found at or in the following locations and vehicles:

> The person of Largent;
>
> The single family residence located at 2240 Golden Gate Drive, Plumas Lake, California;
>
> A 1999 silver Volkswagen four door sedan, California license 5SZX453 registered to Michael Largent, 2240 Golden Gate Dr., Plumas Lake, California;   AND
>
> A 2003 grey Lexus four door sedan, California license 6CNH729, registered to Michael Golargent, 2240 Golden Gate Dr., Plumas Lake, California.

I therefore request that the Court authorize the execution of a search warrant to enter and search these locations and vehicles identified in Attachment A, for the items identified in Attachment B.

## Sealing Request

35.     I respectfully request that this Affidavit and Application and Search Warrant be sealed until the execution of the search warrant. Disclosure of the search warrant affidavit at this time would seriously jeopardize the ongoing investigation as the targets would not otherwise be aware of the scope of this warrant or that their activities are currently the subject of an ongoing investigation. Disclosure at this time would provide the targets with the opportunity to destroy evidence, change patterns of behavior, notify other confederates, or allow confederates to flee. Further, the investigation in this

///

///

///

///

///

///

matter is continuing, and disclosing the affidavit's contents prior to execution will likely preclude or impede the agents and investigators working on this matter from investigating new criminal activity or leads.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and information.

BRIAN J. KORBS
Senior Special Agent
United States Secret Service

Sworn to before me this
__7__th day of May, 2008

HONORABLE DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF CALIFORNIA


Approved as to Form

Robin R. Taylor
United States District Court
Eastern District of California

11

## ATTACHMENT A

- The residence located at 2240 Golden Gate Drive, Plumas Lake, California; is a single family residence located in the County of Yuba, the community of Plumas Lake within the Eastern District of California. Plumas Lake and this address in particular is sometimes referred to as being within the city of Olivehurst, California. The house faces East and is located on the West side of Golden Gate Drive. The exterior of the house is a brown or beige color, with tan trim. The attached garage also faces East and the house numbers "2240" are affixed to the façade of the house to the left of the garage door. There is brick masonry on both sides of the garage. A picture of this house appears below.



- a 1999 grey Volkswagen sedan, California 5SZX453; registered to Michael Ian Go Largent, 2240 Golden Gate drive, Plumas Lake, California.

- a 2003 grey Lexus sedan, California 6CNH729; registered to Michael Ian Golargent, 2240 Golden Gate drive, Plumas Lake, California.

- and the person Michael Ian Go Largent, an Asian male, date of birth September 24, 1986, of Plumas Lake, California.

## ATTACHMENT B

1. Documents, statements, bills, from financial institutions, including E*Trade, Charles Schwab, Metabank, Google, FirstStar Bank, Skylight, Green Dot Corporation, Capital One, and Bankcorp or other entities used by Largent to carry out the fraud.

2. Documents related to accounts in the name Michael Largent, or in other names, including Speed Apex, Rusty Shackelford, Johnny Blaze, Hank Hill, Mylene Morrales, Largent Inc., Erika Jones, Hank Hill, Naiyoon Chao, Largent, or other aliases used by Largent, including account numbers, statements, cancelled checks, check books, savings passbooks, tax records, credit cards, ATM or access cards, correspondence, and memoranda;

3. Personal identification and financial information of Largent, and others, including California ID cards, driver's licenses, social security numbers, mail, check cashing cards or other access or identification devices which would facilitate monetary transfer or transaction with financial institutions used to carry out the fraud;

4. Items used to commit the fraud, including personal organizers, telephone address books, telephone bills, photographs, and papers and documents consisting of names and/or lists of numbers.

5. Any type of records to include, but not limited to, ledgers and journals which record any receipt of funds, any credit or debit receipts or payments regarding the fraud.

6. Any and credit, debit, pre-paid or stored value cards to include Mastercards, Visas, Discover Cards, American Express Cards, Gift Cards, Retail Store Cards and other financial institution and documents re the same regarding the fraud.

7. Evidence of fraudulent purchases, foreign or domestic, including, but not limited to, real estate, vehicles, appliances, electronics, luxury items, or securities. Also, money in any form including but not limited to money orders, traveler's checks and cashier's checks, and cash of more than $500.

8. Any evidence or instrumentality of the existence of any computer program or script or training manuals, instructions or examples pertaining to any computer program or script designed to attack financial institutions using the internet.

9. Articles of personal property and documents showing concealment of money and assets from the fraud, including, books, receipts, records, vehicle records, bank statements and records, business records, money drafts, letters of credit, United States and foreign currency, money orders and cashier check receipts, wire transfer receipts, passbooks, bank checks, safes, and records and keys of safe deposit boxes and storage lockers;

10. Articles of personal property showing the identity of person occupying, possessing, residing in, owning, frequenting or controlling the premises to be searched or property therein, specifically keys, rental agreements and records, property acquisition records, utility and telephone bills and receipts, photographs, answering machine tape recordings, telephone beeper or paging devices, storage records, vehicle records, canceled mail envelopes, correspondence, personal and travel identification documents, and financial documents such as tax returns, bank records, safe deposit box records, canceled checks, and other records of income and expenditure, credit card and bank records;

11. Any and all records, e-mail, or correspondence, in any form, relating to Internet Service Providers (ISPs) that might have been used at 2240 Golden Gate Drive, Plumas, California or other locations in furtherance of fraud.

12. Any records or correspondence relating to the telephone number (530) 749-1815.

13. The term "records," "documents," and "materials," include all of the foregoing items of evidence in whatever form with "whatever" meaning records, documents, or materials, their drafts, or their modifications that may have been created or stored, including any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any mechanical form (such as phonograph, records, printing or typing); any electrical, electronic or magnetic form (such as tape recording, cassettes, compact discs, or any information on an electronic or magnetic form, more fully described below.

14. Any computers or computer devices to include:

    A. File servers, desktop computers, laptop computers, mainframe computers, and storage devices such as hard drives, Personal Digital Assistants (PDAs), cellular telephones, Zip disks, thumb drives, Navigation Systems, DVD's, CD's, floppy disks, MP3 players, computer routers, switches, telecommunications fiber cables, and computer network equipment, that were or may have been used as a means to commit fraud.

    B. Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data, in the form of electronic records, documents, and other materials recording on computer media or on media capable of being read by a computer or computer-related equipment, such as fixed disks, external hard drives, removable hard disk cartridges, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, or other memory storage devices, that were or may have been used as a means to commit fraud.

C. The term records include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, or magnetic form.

D. Computer content and connection log files, including dates, times, methods of connecting (e.g., Telnet, FTP, http), ports used, telephone dial-up caller identification records, and any other connection information or traffic data for computers that were or may have been used to commit fraud.

E. Computer-related documentation, meaning any written, recorded, printed, or electronically-stored material that explains or illustrates the configuration or use of any computer hardware, software, or related items that were or may have been used to place fraudulent orders and/or to commit fraud.

F. Computer passwords and data security devices, meaning any devices, programs, or data - - whether themselves in the nature of hardware or software - - that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records, and that were or may have been used to place fraudulent orders and/or to commit fraud. Such items include but are not limited to data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form.

   I. Note on the seizure of computer systems and components. The seizure of computer systems or computer system components, including hardware and software, is specifically authorized as necessary by this search warrant, not merely to the extent such computer system components constitute fruits and instrumentalities of the criminal activity described above, but also for the purpose of conducting off-site examinations of their contents for evidence or fruits of that criminal activity.

   II. Note on the duplication of computer storage media. The agents will initiate the search by making a duplicate, or "image," copy of the computers, hard drives, and digital storage devices found on the premises within 30 days of the date that the warrant is signed. The agents will then use the duplicate image copies to search for the items listed above.

   III. Note on hidden and encrypted data. Law enforcement personnel will search for and attempt to recover "deleted," "hidden," or encrypted data to determine whether the data falls within the list of items to be seized, as set forth herein.

IV. <u>Computers to be returned.</u> If the computers found are not needed for evidentiary purposes (i.e. for latent fingerprint examination or determined to be fraudulently purchased) and absent a further showing of good cause with the Court, they will be returned within 60 days of the date the warrant is signed.